UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Court File No. 19-cr-87 (WMW/LIB) (1) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Dayton Gage Lussier, | |
| Defendant. | |

This matter comes before the undersigned United States Magistrate Judge upon Defendant Dayton Gage Lussier's ("Defendant") Motion to Suppress Statements. [Docket No. 19]. This case has been referred to the undersigned Magistrate Judge for a report and recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a motions hearing on May 16, 2019, regarding the parties' pretrial motions.[1]

Following the motions hearing, the parties requested the opportunity to submit supplemental briefing. The Court took Defendant's Motion to Suppress Statement, [Docket No. 19], under advisement on June 7, 2019.

For reasons discussed herein, the Court recommends that Defendant's Motion to Suppress Statements, [Docket No. 19] be **DENIED**.

I. **BACKGROUND AND STATEMENT OF FACTS**

   A. **Background**

Defendant is charged with one count of assault with a dangerous weapon, in violation of 18 U.S.C. §§ 113(a)(3), 1151, and 1153(a); and one count of assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 113(a)(6), 1151, and 1153(a). (Indictment [Docket No. 1]).

---

[1] The Court addressed the parties' pretrial discovery motions by separate order. [Docket No. 32].

**B. Facts**

Defendant's motion asks the Court to suppress statements that the Defendant made to law enforcement on April 18, 2018, because he asserts he was subject to what amounted to a custodial interrogation without having been provided a Miranda advisory. (Def.'s Mot. [Docket No. 19]; Def.'s Mem. in Supp., [Docket No. 20], at 3–4).

On April 18, 2018, three members of law enforcement arrived at the driveway of Defendant's grandfather's residence to interview Defendant. (May 16, 2019, Motions Hearing, Digital Recording at 1:37–1:38 p.m.). The three members of law enforcement arrived in multiple vehicles, which were all unmarked and at no point did the officers turn on the police lights or sirens of any of the vehicles. (Id. at 1:43–1:44 p.m.). When the officers arrived, Defendant's mother and grandfather were present, and the officers talked to both of them. (Id.). Thereafter, Defendant arrived at the residence in his vehicle approximately 30 seconds later. (Id.; 1:53–1:54 p.m.). After Defendant arrived, the officers did not make any effort to block in the vehicle he arrived in. (Id. at 1:57–1:58 p.m.).

At approximately 4:45 p.m., Federal Bureau of Investigations Special Agent Mark Meyers (hereinafter "SA Meyers"), who was in civilian attire, began a recorded interview of Defendant. (Id.). The interview occurred outside of Defendant's grandfather's property in an area that was not fenced in. (Id. at 1:41–1:42 p.m.; 1:49–1:50 p.m.). Additionally, during the interview, Defendant's mother and grandfather were standing and talking to the other officers a few feet away from Defendant within earshot of the interview. (Id.).

Before SA Meyers started his recording device, he introduced himself and asked Defendant if he could speak with him. (Id. at 1:51–1:52 p.m.). He then asked Defendant to walk with him towards his vehicle. (Id. at 1:40–1:41 p.m.). At the start of the interview, SA Meyers set the

recording device on the hood of his vehicle and asked Defendant his name and date of birth. (Gov't Ex. 1 at 0:15–0:45).[2] SA Meyers then informed Defendant that he wanted to talk him about an incident that Defendant was involved in with a person named Avery. (Id. at 1:45–2:00). At the conclusion of the interview, SA Meyers told Defendant to "have a nice day." (Id. at 11:15–11:25).

In total, the interview lasted for approximately 11 minutes. At no point during the interview did any law enforcement officer have a weapon drawn, nor was Defendant handcuffed at any point during his encounter with law enforcement. (May 16, 2019, Motions Hearing, Digital Recording at 1:45–1:46 p.m.). Further, at no point during the interview did SA Meyers or the other two law enforcement officials inform Defendant that he was under arrest or going to be arrested. Furthermore, SA Meyers maintained a conversational tone during his interview with Defendant. (Id. at 1:46–1:47 p.m.). At no point during the interview did Defendant ask any of the officers if he could leave or otherwise indicate that he wanted to end the interview. Additionally, at no point during the interview did SA Meyers or any other law enforcement officer make any promises to Defendant. (Id. at 1:49–1:50 p.m.).

**A. Standard of Review**

As noted above, Defendant generally argues that the circumstances on April 18, 2018, were tantamount to him being in custody during his interview such that law enforcement was required to read him a Miranda warning, and that, as a result of the officers' failure to read him any Miranda warnings, the statement that he made during the interview on April 18, 2018, ought to be suppressed. (Def.'s Mem. in Supp., [Docket No. 20], at 3–4).

---

[2] At the motions hearing, the Government, without objection, offered the audio recording of SA Meyers' interview of Defendant on April 18, 2018, into evidence as Government's Exhibit 1. (May 16, 2019, Motions Hearing, Digital Recording at 1:35–1:36 p.m.).

"[Miranda] prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his [F]ifth [A]mendment privilege against self-incrimination and right to an attorney." United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)). Law enforcement must provide a Miranda advisory prior to interrogation when a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way." Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda, 384 U.S. at 444). Significantly, law enforcement officers "are not required to administer Miranda warnings to everyone whom they question." Oregon v. Mathiason, 429 U.S. 492, 495 (1977). "Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him in custody." Id. (internal quotation omitted).

The Eighth Circuit considers six (6) factors when evaluating whether an individual is "in custody" for the purposes of Miranda:

> (1) Whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or (6) whether the suspect was placed under arrest at the termination of the questioning.

United States v. Sanchez, 676 F.3d 627, 630 (8th Cir. 2012) (quoting United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990)). "The first three indicia are mitigating factors which, if present, mitigate against the existence of custody at the time of questioning. Conversely, the last three indicia are aggravating factors which, if present, aggravate the existence of custody." United States

v. Axsom, 289 F.3d 496, 500-01 (8th Cir. 2002). None of the six factors, however, is entirely dispositive; "[t]he analysis depends upon a review of the totality of circumstances, and '[t]he ultimate test is whether a reasonable person in that position would have felt free to end the interview.'" Sanchez, 676 F.3d at 630-31 (quoting United States v. Aldridge, 664 F.3d 705, 711 (8th Cir. 2011)). Because the ultimate custody determination is based on the totality of the circumstances, a particularly strong showing on one factor may compensate for a deficiency on another factor. Griffin, 922 F.2d at 1347, 1349. The key inquiry is whether there was a formal arrest or restraining of a defendant's movement to the degree associated with a formal arrest. Stansbury, 511 U.S. at 322. "In answering this question, we look at the totality of circumstances while keeping in mind that the determination is based 'on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.'" United States v. LeBrun, 363 F.3d 715, 720 (8th Cir. 2004) (en banc) (quoting Stansbury, 511 U.S. at 322-23), cert. denied LeBrun v. United States, 543 U.S. 1145 (2005). The Court must examine "both the presence and extent of physical and psychological restraints placed upon the person's liberty during the interrogation in light of whether a reasonable person in the suspect's position would have understood his situation to be one of custody." Axsom, 289 F.3d at 500 (internal quotation marks omitted).

A custodial interrogation is one that "involves questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444. Courts define interrogation as "express questioning or its functional equivalent," which includes "words or action on the part of the police (other than those normally attendant to arrest and custody) that the police should know are

5

reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980).

### B. Analysis

In the present case, applying the various factors to be considered to the circumstances of Defendant's April 18, 2018, interview, the totality of the circumstances do not support a conclusion that Defendant was subject to a custodial interrogation.

#### a. Knowledge that encounter was voluntary

The first factor weighs heavily in favor of a finding that the suspect is not in custody when officers clearly inform the suspect that he is free to leave or decline questioning. United Sanchez, 676 F.3d at 630–31 (8th Cir. 2012). Here, there is no indication that the officers communicated to Defendant that he was free to leave or decline to answer any questions. Rather, after starting the recording device, SA Meyers immediately began asking Defendant questions, such as what his name was and his date of birth. (Gov't Ex. 1 at 0:15–0:45).

Accordingly, this factor weighs slightly in favor of finding that Defendant was in custody during the April 18, 2018, encounter.

#### b. Restraint on Freedom

Defendant generically argues that "[b]ecause of the way the interrogation was structured, [Defendant] did not think he could just walk away from the agents and thus did not try to do so." (Mem. in Supp., [Docket No. 20], at 5). As previously discussed, the key inquiry is whether there was a formal arrest or restraining of a defendant's movement to the degree associated with a formal arrest. Stansbury, 511 U.S. at 322.

Here, there was no formal arrest, nor any physical restraint placed on Defendant to the degree that could be associated to be a formal arrest. (May 16, 2019, Motions Hearing, Digital

6

Recording at 1:45–1:46 p.m.). Rather, after Defendant arrived at his grandfather's house and the officers began interacting with Defendant, at no point was Defendant placed in handcuffs during the entire time he was interacting with law enforcement, nor was he patted down. (Id.). Furthermore, during the course of the interview, Defendant remained unrestrained in the driveway of his grandfather's house. (Id.). See, United States v. Skog, No. 18-cr-085 (WMW/HB), 2018 WL 4938718, at *8 (D. Minn. Aug. 28, 2018) (finding that law enforcement interviewing the defendant on his front lawn weighed against finding that the interrogation of the defendant was custodial in nature).

This second factor, therefore, weighs against a finding of Defendant being in custody during the April 18, 2018, interview.

### c. Initiated Contact/Voluntary Acquiescence

Law enforcement initiated the interaction with Defendant when they began questioning him after he arrived at his grandfather's residence. (May 16, 2019, Motions Hearing, Digital Recording at 1:47–1:48 p.m.). However, after law enforcement initiated contact with Defendant, the record shows that Defendant voluntarily continued talking to law enforcement without ever seeking to end the interview. (Id.).

Accordingly, the third factor weighs against a finding that Defendant was in custody. See, Axsom, 289 F.3d at 501 (concluding that the third factor mitigated a finding that the defendant had been in custody where he voluntarily acquiesced to police questioning even though he didn't initiate contact with the police).

### d. Strong Arm or Deceptive tactics

Defendant concedes that "the agents did not strong arm or deceive [him] into giving a statement . . . ." (Mem. in Supp., [Docket No. 20], at 6).

7

Some strong arm tactics examples can include confronting suspects with false or misleading witness statements, repeatedly lying to the suspect, or employing a good cop-bad cop routine. United States v. Peterson, No. 14-cr-328 (JRT/FLN), 2015 WL 1585507, at *7 (D. Minn. Apr. 2, 2015) (citing United States v. Beraun–Panez, 812 F.2d 578, 580 (9th Cir. 1987)). Other deceptive or strong arm tactics include utilizing persistent and relentless questioning, giving false legal advice to attempt to trick the suspect into confessing to a crime, or manipulating the suspect's insecurities about his or her surroundings. Miranda v. Arizona, 384 U.S. 436, 455 (1966).

In the present case, there is no evidence that the officers used any of the aforementioned strong arm tactics during the April 18, 2018, interview, and SA Meyers testified that he did not use any such tactics. (May 16, 2019, Motions Hearing, Digital Recording at 1:49–1:50 p.m.). Rather, the Court's review of the audio recording of the interview indicates that the officers and Defendant engaged each other in casual, conversational tones without any voices being raised, without any threats being made, nor were any weapons being brandished. (Gov't Ex. 1).

Accordingly, this factor too weighs against a finding that Defendant was in custody during the April 18, 2018, interview. See, United States v. Jakel, No. 15-cr-40 (MJD/HB), 2015 WL 4136412, at *10 (D. Minn. July 8, 2015) (no strong arm or deceptive tactics where officers did not make promises or threats or confront the suspect with false or misleading statements).

e. **Police dominated atmosphere**

There were some aspects of the encounter that might be described as somewhat police dominated. For example, there were three law enforcement officers who arrived in multiple vehicles. (May 16, 2019, Motions Hearing, Digital Recording at 1:43–1:44 p.m.). However, at no point did the officers turn on the police lights or sirens of any of the vehicles, nor did the officers

8

make any effort to block in the vehicle Defendant arrived in. (Id. at 1:43–1:44 p.m.; 1:57–1:58 p.m.). Additionally, only SA Meyers talked to Defendant. (Id. at 1:41–1:42 p.m.).

Furthermore, other aspects of the encounter weigh against a finding that the atmosphere was police dominated. For example, both Defendant's mother and grandfather were present and within earshot of SA Meyers' interview with Defendant. (Id. at 1:41–1:42 p.m.). See, United States v. Gurno, No. 07-cr-296 (JNE/RLE), 2007 WL 3521367, at *5 (D. Minn. Nov. 14, 2007) (finding that law enforcement's interview of a defendant in a conference room in a public place tended to show that the atmosphere of the interview was not police-dominated).

Accordingly, this factor also does not weigh in favor of finding that Defendant was in custody during the April 18, 2018, encounter.

### f. Arrest at the End of the Encounter

Finally, Defendant was not arrested at the end of the encounter. (May 16, 2019, Motions Hearing, Digital Recording at 1:49–1:50 p.m.). As such, this factor weighs squarely against a finding that Defendant was in custody during the April 18, 2018, encounter. See, United States v. Chapman, No. 18-cr-250 (ECT/SER), 2019 WL 2016799, at *8 (D. Minn. Feb. 14, 2019) (finding that where law enforcement did not arrest defendant conclusion of their interview of the defendant weighed against finding that the defendant was in custody).

### g. Other Circumstances

The Eighth Circuit has made clear that the above-listed factors are not all of the circumstances that a court may consider when determining whether a suspect is in custody for the purposes of Miranda. See, e.g., Sanchez, 676 F.3d at 630–31. In the present case, the general character of the April 18, 2018, encounter as a whole weighs against a finding that Defendant was in custody during the encounter. For most of the 11-minute encounter, Defendant stood in the

9

driveway of his grandfather's house with SA Meyers, with his grandfather and his mother only a few feet away. See, Axsom, 289 F.3d at 502 ("When a suspect is interrogated in the comfort and familiarity of his home, a court is less likely to find the circumstances custodial."). Also, at no time was Defendant physically restrained or subject to any search of his person whatsoever. Accordingly, these other circumstances weigh as well in support of a finding that Defendant was not in custody during the interview at issue. See, United States v. Larson, No. 19-cr-27 (DWF/LIB), 2019 WL 2587915, at *10 (D. Minn. June 6, 2019) (finding that the general character of an interview was non-custodial where the interview occurred in the defendant's living room and where the defendant was not subject to any search of his person).

Based on the foregoing, the undersigned concludes that Defendant was not in custody during his encounter with and interview by law enforcement at his grandfather's residence on April 18, 2018, and therefore, the officers were not required to provide him with the Miranda warnings before speaking with him about an incident involving someone named Avery.

Accordingly, the Court recommends denying Defendant's Motion to Suppress Statements, [Docket No. 19], regarding the statements that he made during his brief encounter with law enforcement officers on April 18, 2018.

## II. CONCLUSION

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress Statements, [Docket No. 19], be **DENIED**, as discussed above.


Dated: July 2, 2019                               s/Leo I. Brisbois
                                                  Leo I. Brisbois
                                                  U.S. MAGISTRATE JUDGE


**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]"  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.